# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| SHERI TROZZI, | ) | Case No. 1:20-cv-00684 |
| Plaintiff, | ) ) | Judge J. Philip Calabrese |
| v. | ) ) | Magistrate Judge David A. Ruiz |
| LAKE COUNTY, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

## OPINION AND ORDER

This case arises out of Plaintiff Sheri Trozzi's arrest pursuant to a traffic stop in Mentor, Ohio and subsequent detention in the Lake County Adult Detention Center. Plaintiff claims that, despite her repeated requests, jail personnel refused to give her prescription medication. After she complained of severe abdominal pain, a doctor at the jail transferred Ms. Trozzi to a hospital, where she underwent surgery to repair a liver abscess and a perforated gastric ulcer.

Plaintiff brought suit under 42 U.S.C. § 1983 against certain jail employees for allegedly violating her rights under the Eighth and Fourteenth Amendments (Count I). She also asserts a *Monell* claim against Lake County and former Lake County Sheriff Daniel Dunlap (Count II). Defendants move for summary judgment. For the reasons that follow, the Court **GRANTS** the motion.

## STATEMENT OF FACTS

In 2014, Plaintiff Sheri Trozzi underwent gastric bypass surgery. (ECF No. 18, PageID #96.) Within a year of the surgery, Ms. Trozzi's doctors prescribed a diet high

in vitamins and minerals and low in refined sugar. (*Id.*, PageID #99–100.) Her doctors also prescribed Protonix to prevent ulcers. (*Id.*) Ms. Trozzi testified that she took Protonix daily, as prescribed, since 2015. (*Id.*, PageID #102.) Ms. Trozzi also testified that she is prone to ulcers and received treatment for them in the years since her surgery. (*Id.*)

Construing the record in Plaintiff's favor on this motion for summary judgment, the record demonstrates the following facts relevant to the claims at issue.

### A. Ms. Trozzi's Arrest on March 29, 2018

According to a Mentor Police Department report, the police stopped Ms. Trozzi in her car on the evening of March 29, 2018 for suspected shoplifting from Walmart. (ECF No. 24-1, PageID #643.) During a search of her vehicle, police found items allegedly stolen from Walmart and arrested Ms. Trozzi. (*Id.*) They transported her to the Lake County jail and impounded her vehicle. (*Id.*, PageID #644.) Ms. Trozzi informed the arresting officers that she needed to take a bottle of Protonix with her and that the medication was located in the car's center console. (ECF No. 18, PageID #106.)

Although Ms. Trozzi claims the officers ignored her request to bring her prescription, the police report states that the officers found a prescription bottle in the center console. (*Id.*) However, that medicine was not Ms. Trozzi's, and it was not Protonix. (*Id.*) The bottle in the center console contained fourteen pills of Buspirone prescribed to someone other than Ms. Trozzi. (*Id.*) When the arresting officer questioned Ms. Trozzi about the pills, she said a friend left them there. (*Id.*)

2

### B. Ms. Trozzi's Booking at the Jail

During her booking into the Lake County jail, Ms. Trozzi underwent an initial medical screening. (ECF No. 18, PageID #258–60.) The screening form reflects that Ms. Trozzi answered "no" when asked whether she was presently taking any medication for ulcers, whether she was on a special diet prescribed by a physician, whether she had any health problems, and whether she had any medical problems of which the jail staff should be aware. (*Id.*; *see also id.*, PageID #265.)

Ms. Trozzi does not recall being asked these questions; however, the answers are "not accurate, because I would have told them about my history of gastric bypass. Again, with my medical prescription needs, Protonix, and I would have told them the severity of that. And I also would have told them of my dietary restrictions." (*Id.*, PageID #133.) Ms. Trozzi acknowledges that she signed the intake form but testified it was not given to her to review before she did. (*Id.*, PageID #135.) Further, Ms. Trozzi testified that "I told at least two booking officers that I needed my medication and at least one officer my dietary needs." (*Id.*, PageID #145.)

### C. Inmate Request Forms

While detained at the jail, Ms. Trozzi also filled out four forms requesting various types of medical assistance. On April 5, 2018, a week after her arrest, Ms. Trozzi requested two medications for her mental health because it appeared she would be in the jail for a while. (*Id.*, PageID #270.) Her written request states, "I have been here for one week now. I was waiting to see what was going to happen at court, but I am going to be staying here for 180 days." (*Id.*) Then, she needed help to

3

fill prescriptions for "Trozadone and Buspar" for her mental health. (*Id.*, PageID #270.) Four days later, the form reflects that she was "seen by mental health." (*Id.*)

Also on April 5, 2018, Ms. Trozzi filled out a second request form. (*Id.*, PageID #271.) In this request, Ms. Trozzi advised that she previously had gastric bypass surgery and "cannot eat normal meals and must have 6 small meals a day to stay somewhat healthy." (*Id.*) She also identified her surgeon and requested specific foods. (*Id.*)

When a health care professional met with Ms. Trozzi on April 9, 2018 to address her medical needs, she advised of her "surgery for weight loss." (*Id.*, PageID #274.) The record of the visit notes that Ms. Trozzi takes Trazodone and Buspar. (*Id.*) However, it makes no mention of Protonix. (*Id.*) Ms. Trozzi testified that she has no recollection of this or any other meeting with anyone at the jail regarding her medical requests. (*Id.*, PageID #169.)

On April 10, 2018, Ms. Trozzi completed two more inmate request forms, one addressed to "Medical" and the other to "Captain." (*Id.*, PageID #279 & #280.) The former provided information about her surgery, which she wrote occurred in 2014, and advised that other institutions were able to meet her dietary requests. (*Id.*, PageID #279.) Ms. Trozzi underscored that, "because of my surgery, I need to be put back on my stomach medicine, Protonix 40 mg. It prevents ulcers + I am already beginning to develop one." (*Id.*) In the latter form, Ms. Trozzi states that she made multiple medical requests "pertaining to my dietary needs with no action taken. I had gastric bypass surgery + am ordered to eat 6 meals a day." (*Id.*, PageID #280.)

4

Further, she requested Protonix to prevent bleedings ulcers, which "I am already developing without this medication." (*Id.*) That form includes a note from jail staff indicating that Ms. Trozzi was scheduled to see the jail doctor during his next visit on April 13, 2018. (*Id.*)

At her deposition, Ms. Trozzi testified that she told multiple officers "within the first three days" of booking that she needed Protonix. (*Id.*, PageID #154.) Further, she made these requests both verbally and in writing to "dozens of officers." (*Id.*, PageID #155.) Ms. Trozzi also confirmed in her testimony that the form on April 5, 2018 was the first request she made in writing to the jail staff for any medication. (*Id.*, PageID #150–51.)

### D. The April 12, 2018 Incident

At approximately 2:20 am on April 12, 2018, Ms. Trozzi began experiencing extreme abdominal pain and pressed the emergency button for help. (*Id.*, PageID #185.) Defendant Stakich, a corrections officer at the Lake County Detention Center, responded immediately to Ms. Trozzi's cell. (*Id.*, PageID #186–87.) Mr. Stakich called his supervisor, Defendant Sgt. Capron. (ECF No. 21, PageID #565.) The officers took Ms. Trozzi's blood pressure and temperature and obtained a wheelchair to move her to a holding cell where she was observed every 30 minutes. (*Id.*, PageID #187; ECF No. 20, PageID #464.) Ms. Trozzi testified that she was covered in urine, feces, and bloody vomit from the time the officers responded to her cell until Nurse Snow visited her early that morning. (ECF No. 18, PageID #191–92.)

5

Sgt. Capron then called Diane Snow, a registered nurse and the medical coordinator at the jail. (ECF No. 20, PageID #477; ECF No. 19, PageID #307.) He reported his observations and Ms. Trozzi's vital signs to Ms. Snow. (ECF No. 20, PageID #439.) Ms. Snow did not find that Ms. Trozzi's vital signs indicated an emergency, so she advised Sgt. Capron to give Ms. Trozzi an antacid tablet and to continue to observe her every 30 minutes until the morning sick call. (*Id.*, PageID #440.)

Ms. Trozzi testified that she saw Ms. Snow at 8:30 am on April 12, 2018. (ECF No. 18, PageID #192–93.) According to her testimony, Ms. Snow initially told her that she (Ms. Snow) was not ready to see Ms. Trozzi, cursed at her, and told her that she would see her at the end of her shift. (*Id.*) Ms. Trozzi testified that Ms. Snow "did nothing" to help her, but merely stopped by her cell about six hours later to tell her that she was going to see the doctor in two days. (*Id.*)

On April 13, 2018 at 7:20 pm, the jail doctor sent Ms. Trozzi to the emergency room by ambulance. (*Id.*, PageID #203–04.) Ms. Trozzi had surgery for a liver abscess and perforated ulcer at Geauga Medical Center and was transferred to University Hospitals in Cleveland for recovery. (*Id.*, PageID #207.)

## STATEMENT OF THE CASE

Based on these facts, Plaintiff brings a claim under Section 1983 against Diane Snow, Ryan Stakich, and Scott Capron (Count I). (ECF No. 1, ¶¶ 37–44, PageID #8.) Specifically, Plaintiff claims these Defendants were "deliberately indifferent" to her serious medical needs which, Plaintiff claims, amounts to "cruel and unusual punishment" in violation of the Eighth and Fourteenth Amendments. (*Id.*)

In Count II, Plaintiff asserts a claim under *Monell v. New York City Department of Social Services*, 426 U.S. 658 (1978), against Lake County and Daniel Dunlap, the former Lake County Sheriff, arguing that Defendants' unconstitutional actions resulted from a policy or custom implemented with deliberate indifference to Plaintiff's rights. (*Id.*, ¶¶ 45–54, PageID #9–10.)

## ANALYSIS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court must view evidence in the light most favorable to the non-moving party. *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

On a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the claim or defense at issue. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n.12 (6th Cir. 1989); *Chappell v. City of Cleveland*, 584 F. Supp. 2d 974, 988 (N.D. Ohio 2008). After discovery, summary judgment is appropriate if the non-moving party fails to establish "an element essential to that party's case and upon which that party will bear the burden of proof at trial." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

To determine whether a genuine dispute about material facts exists, it is not the Court's duty to search the record; instead, the parties must bring those facts to the Court's attention. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). "The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Tokmenko*, 488 F. Supp. 3d at 576 (citing *Celotex Corp.*, 477 U.S. at 322). Then, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate. *Tokmenko*, 488 F. Supp. 3d at 576 (citing *Anderson*, 477 U.S. at 250). However, if "the evidence is merely colorable or is not significantly probative," summary judgment for the movant is proper. *Id.* The "mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48).

Against the backdrop of this familiar standard, the Court analyzes Defendants' motion for summary judgment.

8

## I. Deliberate Indifference to Serious Medical Needs (Count I)

The Eighth Amendment protects against cruel and unusual punishment. U.S. Const. amend. VIII. Plaintiff, a pretrial detainee, brings a claim under 42 U.S.C. § 1983. "The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Phillips v. Roane County*, 534 F.3d 531, 539 (6th Cir. 2008); *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

To succeed on such a claim, a plaintiff must meet an objective as well as subjective test. "For the objective component, the detainee must demonstrate the existence of a sufficiently serious medical need." *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005)). A serious medical need is "one 'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Jones*, 625 F.3d 835, 941 (6th Cir. 2010) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). Defendants concede that Plaintiff meets the objective component of her claim; they do not dispute that Ms. Trozzi had a serious medical condition. (ECF No. 25-1, PageID #671–72.)

"For the subjective component, the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Id.* (quoting *Estate of Carter*, 408 F.3d at 311). A defendant has a sufficiently culpable

9

state of mind if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Therefore, the Court analyzes the record on summary judgment to determine whether Defendants had knowledge of Ms. Trozzi's serious medical condition and disregarded it. Crediting Ms. Trozzi's testimony that she advised jail staff of her condition, need for prescription Protonix, and potential for ulcers, the Court assumes a jury could find Defendants knew of Ms. Trozzi's serious medical condition and focuses its analysis on whether they disregarded it.

**I.A. Defendant Stakich**

The record shows that in the early morning hours of April 12, 2018, Defendant Stakich quickly responded to Plaintiff's cell when she hit the emergency call button. (ECF No. 18, PageID #169; ECF No. 21, PageID #554.) Upon arriving at Plaintiff's cell, Defendant Stakich noted that Plaintiff was "sitting on the edge of her bunk, doubled-over in pain." (ECF No. 23, PageID #616.)

On observing Ms. Trozzi's condition, Defendant Stakich immediately radioed his supervisor, Defendant Sgt. Capron, to alert him to Plaintiff's need for medical attention. (*Id.*) When Sgt Capron arrived approximately five minutes later, Defendant Stakich obtained a wheelchair for Ms. Trozzi so Sgt. Capron could wheel her to the female holding area for further evaluation and treatment. (ECF No. 21, PageID #566.) This single incident appears to be the only interaction Defendant Stakich had with Plaintiff, and Plaintiff testified that she did not recall any prior interactions with Defendant Stakich. (ECF No. 18, PageID #179.) Nor does the

10

complaint make other allegations against him (*see* ECF No. 1, ¶ 25, PageID #5), though Plaintiff could not rely on those allegations alone on summary judgment.

On these facts, the Court finds that no rational juror could return a verdict in favor of Plaintiff on her claim against Defendant Stakich because the evidence demonstrates that he acted appropriately in this situation. Plaintiff maintains Defendant Stakich should have called 911. (ECF No. 27, PageID #701–02.) Though he did not call 911, calling his supervisor does not show a disregard for Ms. Trozzi's medical condition. Contrary to Plaintiff's claim, Defendant Stakich did not do "absolutely nothing." (ECF No. 27, PageID #701.) His actions fall far below the high standard for establishing deliberate indifference. Therefore, Defendant Stakich is entitled to summary judgment.

**I.B. Defendant Sgt. Capron**

Defendant Sgt. Capron responded to Plaintiff's cell within five minutes after being called by Defendant Stakich. (ECF No. 21, PageID #554.) With Defendant Stakich's assistance, Sgt. Capron placed Plaintiff in a wheelchair and transported her to the female holding area where he took her vital signs. (ECF No. 23, PageID #616; ECF No. 20, PageID #435.)

Sgt. Capron then contacted Ms. Snow by phone, who advised him to place Ms. Trozzi on a 30-minute observation schedule. (ECF No. 20, PageID #466.) Sgt. Capron relayed his observations of Ms. Trozzi's condition to Ms. Snow, who instructed him to give Ms. Trozzi antacid tablets for her abdominal pain. (ECF No. 21, PageID #439–40.)

The record reflects that the above facts contain the totality of the only interaction between Plaintiff and Sgt. Capron. That is, Plaintiff can point to no evidence that she interacted with Sgt. Capron at any point prior to April 12, 2018. (ECF No. 18, PageID #179; ECF No. 20, PageID #469.)

On this record, Plaintiff can point to no genuine dispute of material fact from which a rational juror could find that Sgt. Capron acted with deliberate indifference to Ms. Trozzi's medical condition. As a corrections officer, Sgt. Capron called the jail's nurse and reasonably relied on the advice of medical personnel pursuant to the jail's policy for handling inmate medical issues. (ECF No. 23, PageID #621.) "[When] an officer responds to a substantial risk of serious harm by asking for and following the advice of a professional [that] the officer believes to be capable of assessing and addressing that risk, then the officer commits no act of deliberate indifference in adhering to that advice." *McGaw v. Sevier County*, 715 F. App'x 495, 498–99 (6th Cir. 2017). Therefore, Sgt. Capron is also entitled to summary judgment on Count I.

**I.C. Defendant Snow**

With respect to Defendant Snow, Plaintiff relies on two cases from the Sixth Circuit to support her argument that a jury could find that Ms. Snow was deliberately indifferent to Ms. Trozzi's serious medical condition. Both are readily distinguishable from the facts here.

First, Plaintiff cites *Westlake v. Lucas*, 537 F.2d 857, 861 (6th Cir. 1976). There, the Sixth Circuit held the district court improperly dismissed an inmate's Section 1983 claim against prison officials because the inmate adequately stated a

12

cause of action for deprivation of needed medical care. The Sixth Circuit did not reach the merits of the plaintiff's claims. Obviously, dismissal presents a materially different procedural posture than summary judgment.

Second, Plaintiff cites *Dominguez v. Correctional Medical Services*, 555 F.3d 543 (6th Cir. 2009), in arguing that Ms. Snow acted with deliberate indifference by waiting five or six hours to see Ms. Trozzi after learning of her condition. In that case, an inmate informed a prison guard that he did not feel well after exercising on a hot day. Based on the guard's observation that plaintiff's condition was "wobbly," he called the prison nurse and told her that he believed the inmate was suffering from heat exhaustion. The nurse provided no instructions to the guard on how to care for the inmate and said she would check on him during her rounds several hours later. The inmate's condition worsened; he began vomiting, experiencing numbness in his limbs, and had difficulty breathing. Then, the nurse checked the inmate, examined him, and ordered him back to his cell to rest, drink water, and take aspirin. Several hours later, a guard found the inmate unconscious in his cell, which prompted the nurse to call a doctor, who instructed her to monitor the inmate. Against this medical advice, the nurse left the inmate in the care of guards until EMS arrived and assumed his care. Based on these facts, the Sixth Circuit affirmed the denial of summary judgment for the nurse. *Id.* at 553.

In contrast, the record here shows that Ms. Snow was at home when Sgt. Capron called her about Ms. Trozzi's condition, so she was unable to observe Plaintiff personally. (ECF No. 19, PageID #325.) By the time of the incident, and no

13

later than April 11, 2018 (based on the notation on the request form), Ms. Snow knew Ms. Trozzi had requested Protonix. (ECF No. 23, PageID #615.) Less than 24 hours later, Ms. Trozzi hit the emergency button in her cell to alert jail officials of her severe pain. (ECF No. 18, PageID #185.) Knowing of Ms. Trozzi's request for Protonix and complaint about having an ulcer, Ms. Snow determined that an over-the-counter antacid was adequate treatment based on Plaintiff's stable vital signs. (ECF No. 19, PageID #322–23.) She gave explicit instructions to Sgt. Capron to provide Ms. Trozzi with antacids, place her in a separate area of the jail reserved for medical issues, and monitor her every 30 minutes. (*Id.*, PageID #322.) Unlike in *Dominguez*, Ms. Snow provided instructions to the guard for Ms. Trozzi's care and had no second-hand information from the guards to suggest Ms. Trozzi might be experiencing a more serious medical issue.

In the morning when she arrived at the jail, Ms. Trozzi's vital signs were stable, so Ms. Snow decided not to call an ambulance. (*Id.*, PageID #396.) Plaintiff argues Ms. Snow should have called an ambulance when she examined Ms. Trozzi on the morning of April 12, 2018. (ECF No. 27, PageID #697.) Perhaps so. However, even assuming, with the benefit of hindsight, that Ms. Snow should have called an ambulance, her decision not to do so may have been negligent, at most, but it does not amount to deliberate indifference. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511

14

U.S. at 838. Therefore, Ms. Snow is entitled to judgment as a matter of law on Count I.

* * *

Defendants are entitled to summary judgment because Plaintiff cannot meet the standard for deliberate indifference; therefore, no constitutional violation occurred. Accordingly, the Court has no occasion to consider whether Defendants enjoy qualified immunity.

## II. *Monell* Claim – Count II

In Count II, Plaintiff brings a *Monell* claim against Defendants Lake County and its former sheriff, Daniel Dunlap. Plaintiff claims the policy at the Lake County Detention Center "allow[s] inmates to be housed without their prescription medication" and that this policy violates Plaintiff's constitutional rights. (ECF No. 1, ¶ 49, PageID #9.) But the record does not support a determination that a constitutional violation occurred. Accordingly, Defendants Lake County and Dunlap cannot be held liable under *Monell*. *See Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014), and they are entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, there are no genuine disputes of material fact, and Defendants are entitled to a summary judgment in their favor. Therefore, the Court **GRANTS** Defendants' motion for summary judgment. (ECF No. 25.)

**SO ORDERED.**

15

Dated: July 6, 2021

                                              J. Philip Calabrese
                                              United States District Judge
                                              Northern District of Ohio